The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
April 23, 2019

## 2020COA71

**No. 17CA0026, *People v. Maloy* — Constitutional Law —
Colorado Constitution — Equal Protection; Crimes —
Patronizing a Prostituted Child — Inducement of Child
Prostitution — Soliciting for Child Prostitution — Pandering of
a Child**

A division of the court of appeals holds that, under the facts of
this case, charging the defendant with patronizing a prostituted
child violated his right to equal protection of the laws because doing
so subjected him to a longer sentence than he faced for other child
prostitution offenses proscribing the same or more culpable
conduct.

Court of Appeals No. 17CA0026
Jefferson County District Court No. 15CR701
Honorable Margie L. Enquist, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Cravaughn Lacrae Maloy,

Defendant-Appellant.

JUDGMENT AND SENTENCE
AFFIRMED IN PART AND VACATED IN PART

Division V
Opinion by JUDGE J. JONES
Harris and Brown, JJ., concur

Announced April 23, 2020

Philip J. Weiser, Attorney General, Brittany L. Limes, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Brian Cox, Deputy State Public
Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Cravaughn Lacrae Maloy, appeals the judgment of conviction entered on jury verdicts finding him guilty of patronizing a prostituted child, pimping of a child, keeping a place of child prostitution, and inducement of child prostitution. He also appeals the indeterminate sentence of four years to life in the custody of the Department of Corrections (DOC), imposed for his patronizing conviction.

¶ 2    We conclude that, under the facts of the case, charging Maloy with patronizing a prostituted child violated his right to equal protection of the laws. Accordingly, we vacate his conviction and sentence on that count. We otherwise affirm the judgment.

## I.    Background

¶ 3    Two teenagers, M.C. (seventeen) and R.S. (about fifteen), ran away from their group home. A little over a week later, they met Maloy — who was nineteen years old at the time — at a bus stop in Lakewood. They ran into him again the next day and walked with him to some apartments, where M.C. and Maloy talked. Apparently while there, M.C. started crying and Maloy told her "to shut up or he was going to beat [her] up or something."

1

¶ 4     Sometime later, either that same day or the next, Maloy told M.C. to stand on the corner near the White Swan Motel and sell herself.[1]  She testified that she did so because she "didn't know how to say no" and was scared of Maloy.  After she stood on the corner for a while, a customer picked her up and they went to his house for sex; afterward, he dropped her back off at the motel and she kept all the money he had paid her.

¶ 5     Maloy let M.C. stay with him that night.  They went to an apartment where M.C. met Alicia Sykes, Maloy's girlfriend.  Maloy told M.C. she had to work to stay there: she had to sell herself and make him money.

¶ 6     Over the next several days, M.C. continued to prostitute herself with Sykes.  She had sex with another customer in a room at the White Swan Motel.  To help attract more customers, Sykes took pictures of M.C. and posted them to a backpage.com ad she bought with a prepaid credit card.  According to M.C., customers would call the number on the ad — which went to Sykes's phone —

---

[1] R.S. wasn't involved.  Police arrested her later that day after a family friend saw her at a Burger King and called 911.  M.C. and Maloy were with R.S. at the Burger King, but M.C. didn't ask the police for help.

and set up meetings with M.C. through Sykes. Sykes told M.C. what to charge; M.C. would take the money she earned from customers and give it to Sykes or Maloy. She said that sometimes she was sleeping when a customer would call, and either Sykes or Maloy would wake her up and tell her to take a shower to get ready. M.C. also explained that on one occasion Maloy showed her the money that she had made and told her "good job."

¶ 7 Several days later, M.C. went to a Walmart, where a man picked her up. They drove into the mountains together. Police stopped the truck in Idaho Springs, discovered warrants for M.C., and arrested her.

¶ 8 Maloy, Sykes, and several of the customers were charged as a result of the prostitution operation. Maloy's case went to trial. He argued that he didn't induce M.C. to prostitute herself, didn't take money from her, and wasn't involved in the prostitution — instead, Sykes and M.C. had prostituted themselves of their own free will. Maloy also tried to argue that he reasonably believed M.C. was at least eighteen, but the district court denied his motion to allow an affirmative defense based on that belief. The court later instructed the jury on complicity. Ultimately, the jury found Maloy guilty of

patronizing a prostituted child, pimping of a child, keeping a place of child prostitution, and inducement of child prostitution.[2] The court sentenced him to four years in DOC custody on all counts except for count 4 — patronizing a prostituted child — for which it sentenced him to four years to life pursuant to the Colorado Sex Offender Lifetime Supervision Act of 1998 (SOLSA).

## II.    Discussion

¶ 9    We conclude that, under the circumstances of this case, charging Maloy with patronizing a prostituted child violated his right to equal protection of the laws under the Colorado Constitution. We therefore vacate his conviction on that charge. As a result, we don't need to address all of his other contentions. Those that we must address — because they pertain to all of Maloy's convictions — are that (1) the district court erred by determining that section 18-7-407, C.R.S. 2019, prohibited him from raising a reasonable mistake of age defense; (2) if, because of section 18-7-407, mistake of age isn't a defense to child prostitution

---

[2] Maloy was charged with, but acquitted of, soliciting for child prostitution and pandering of a child (inducement). The People also charged him with contributing to the delinquency of a minor but agreed to dismiss that count on the morning of trial.

crimes, that statute violates his right to equal protection and deprives him of due process; (3) the district court erred by rejecting his tendered jury instructions on complicity; and (4) the prosecutor committed misconduct by misrepresenting facts during closing argument. We reject these contentions and affirm Maloy's other convictions.

## A. Constitutionality of Patronizing a Prostituted Child

¶ 10 Maloy contends that section 18-7-406(1)(a), C.R.S. 2019, is unconstitutional because (1) it is unconstitutionally vague and (2) as applied to him, it violates his right to equal protection. We address the second contention first. Because we agree with Maloy's equal protection challenge we don't address his vagueness challenge.

### 1. Standard of Review

¶ 11 We review constitutional challenges to a statute de novo. *People v. Graves*, 2016 CO 15, ¶ 9; *People v. Slaughter*, 2019 COA 27, ¶ 15. Because Maloy didn't preserve his equal protection argument, we won't reverse unless any error was plain. *Hagos v. People*, 2012 CO 63, ¶ 14. Plain error is error that is both "obvious and substantial." *Id.* The latter requirement means that the error

must have so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *Id.*

### 2. As-Applied Equal Protection Challenge

¶ 12 Maloy argues that, as applied to his conduct, section 18-7-406(1)(a) — criminalizing patronizing a prostituted child — violates his right to equal protection of the laws because it prohibits essentially the same conduct, or less culpable conduct, as other child prostitution offenses (specifically, soliciting for child prostitution, pandering of a child, and inducement of child prostitution) while carrying a much higher sentence. We agree as to pandering and inducement.

### a. Applicable Law

¶ 13 "Colorado's guarantee of equal protection is violated where two criminal statutes proscribe identical conduct, yet one punishes that conduct more harshly." *Dean v. People*, 2016 CO 14, ¶ 14. Similarly, "[s]tatutes prescribing different sanctions for what ostensibly might be different acts, but offering no rational standard for distinguishing such different acts for purposes of disparate punishment, also contravene the equal protections guaranties of

6

Colorado's constitution." *People v. Wilhelm,* 676 P.2d 702, 704 (Colo. 1984). And "Colorado's guarantee of equal protection is violated where two statutes proscribe similar conduct, yet the scheme imposes the harsher penalty for acting with intent to cause, or for actually causing, a less grievous result." *Dean,* ¶ 15; *see, e.g., People v. Montoya,* 196 Colo. 111, 114-15, 582 P.2d 673, 675-76 (1978).

¶ 14    But "criminal legislation is not invalidated simply because a particular act may violate more than one statutory provision[.]" *People v. Onesimo Romero,* 746 P.2d 534, 537 (Colo. 1987). Rather, in considering an as-applied equal protection challenge, "we consider whether — under the specific circumstances under which [the defendant] acted — the relevant statutes, or specific subsections of the statutes, punish identical conduct, and whether a reasonable distinction can be drawn between the conduct punished by the two statutes." *People v. Trujillo,* 2015 COA 22, ¶ 21 (citing *Onesimo Romero,* 746 P.2d at 538-39).[3] A reasonable

---

[3] Citing *Campbell v. People,* 73 P.3d 11 (Colo. 2003), the People argue that we are limited to comparing the statutory elements of the relevant offenses in resolving Maloy's equal protection challenge. But we agree with Maloy that an as-applied challenge, in contrast to

7

distinction is one that is "real in fact and reasonably related to the general purposes of criminal legislation." *People v. Marcy*, 628 P.2d 69, 74 (Colo. 1981).

b. Analysis

¶ 15 The People challenge the premise of Maloy's contention, suggesting that since all of the other offenses to which he points are, like patronizing, at least class 3 felonies, they are subject to equal or higher sentencing ranges, meaning there is no disparate treatment. The People miss the mark.

¶ 16 Soliciting and inducement are both class 3 felonies and carry sentences of four to twelve years in DOC custody. §§ 18-1.3-401(1)(a)(V)(A), 18-7-402(2), 18-7-405.5(2), C.R.S. 2019. Depending on the subsection, pandering is either a class 3 felony or a class 2 felony (with a presumptive range of eight to twenty-four years in DOC custody). §§ 18-1.3-401(1)(a)(V)(A), 18-7-403(2), C.R.S. 2019. Patronizing is a class 3 felony as well, *see* § 18-7-406(2), but is included among SOLSA-punishable crimes, and therefore carries a

---

a facial challenge, permits consideration of the facts giving rise to the charge. *See People v. Lee*, 2019 COA 130, ¶ 16. And this isn't one of those cases that requires a more fully developed record to assess the as-applied challenge.

sentence of four years to life. §§ 18-1.3-1003(5)(a)(X), -1004(1)(a), C.R.S. 2019.[4] Under the SOLSA sentencing scheme, the defendant is eligible for release at the bottom of the sentenced range (in Maloy's case, four years), but may, at the parole board's discretion, remain in prison indefinitely.

¶ 17    When analyzing an equal protection claim, Colorado courts "compare[] the relative severity of sentences by reference to the maximum possible period of incarceration, not the timing of parole eligibility." *Dean*, ¶ 10. Under this approach, a sentence that could potentially leave an offender in prison for life is necessarily harsher than a sentence with a maximum twelve-year (or twenty-four-year) end date. We therefore reject the People's argument.

---

[4] Patronizing a child is the only child prostitution offense subject to sentencing under SOLSA. We presume that the General Assembly made that choice because it believed patronizing a child prostitute by "[e]ngag[ing] in an act which is prostitution . . . by a child" is the only child prostitution offense that requires proof of sexual conduct by the child victim. § 18-7-406(1)(a), C.R.S. 2019. But, as we discuss below, it is not clear that proof of such conduct is required to prove prostitution *by* a child. *See* § 18-7-401(6), C.R.S. 2019. And such proof clearly isn't required to prove patronizing a child prostitute by "[e]ngag[ing] in an act which is prostitution *of* a child," § 18-7-406(1)(a) (emphasis added); *see* § 18-7-401(7), which is what creates the equal protection problem in this case. Perhaps the General Assembly should revisit that issue, as well as the language of the child prostitution offenses generally.

9

¶ 18    We also reject the People's argument that patronizing is distinguishable from the other offenses in that it is "the only offense that criminalizes sexual contact with a prostituted child."  True, a person may violate the statute by having sexual contact with a prostituted child.  But such contact isn't required to prove a violation.  In the case of prostitution by a child, the child need only offer or agree to perform certain sexual acts (in exchange for money or other thing of value).  *See* § 18-7-401(6).  In the case of prostitution of a child, the defendant need only induce the child (by coercion, threat, or intimidation) to perform or offer or agree to perform certain sexual acts with a third party, not the defendant.  *See* § 18-7-401(7).

¶ 19    We turn now to the application of the patronizing statute to Maloy's conduct.

¶ 20    Maloy was charged with and convicted of patronizing a prostituted child under section 18-7-406(1)(a), which criminalizes "[e]ngag[ing] in an act which is prostitution of a child or by a child, as defined in section 18-7-401(6) or (7)."  During her opening statement, the prosecutor explained that Maloy scared M.C.; that he threatened to assault her if she didn't do as she was told; and

that he told her to prostitute herself to earn money (and that she did so because of Maloy's threats). During the evidentiary phase of the trial, the prosecution introduced evidence to that effect: Maloy threatened and scared M.C. and told her to prostitute herself — which she did — and Maloy received a cut of the money.

¶ 21 Based on this evidence and the prosecutor's explanation of the People's theory, Maloy's alleged conduct fell under the "prostitution of a child" option — specifically, that Maloy induced M.C. to perform certain sexual acts (with third persons, not Maloy), or induced her to allow others to perform such acts, by coercion or threat or intimidation or in exchange for money or other thing of value. *See* § 18-7-401(7) (defining "[p]rostitution of a child").

¶ 22 As noted, Maloy argues that three other statutes — soliciting for child prostitution, pandering of a child, and inducement of child prostitution — proscribe essentially the same conduct, but carry more lenient sentences. We disagree as to soliciting, but agree that, as applied to Maloy's conduct, Maloy's conviction for patronizing violates equal protection because pandering and inducement penalize the same or more culpable conduct with lighter sentences.

11

### i. Soliciting

¶ 23    Pursuant to section 18-7-402(1), a person commits soliciting for child prostitution if he

> (a)   Solicits another for the purpose of prostitution of a child or by a child;
> (b)   Arranges or offers to arrange a meeting of persons for the purpose of prostitution of a child or by a child; or
> (c)   Directs another to a place knowing such direction is for the purpose of prostitution of a child or by a child.

¶ 24    This section does not proscribe the same conduct as patronizing a prostituted child (prostitution of a child), even as applied to Maloy.  It prohibits certain actions — soliciting, arranging or offering to arrange a meeting, and directing someone to a place — for the *purpose* of prostitution of or by a child.  Under this section, the defendant's conduct is criminal regardless of what the child does, and it doesn't require that the defendant interact with a child at all.  In contrast, as applied to Maloy, patronizing requires that the child actually perform, offer, or agree to perform certain sexual acts.  And it requires that the defendant induce the child to do so by coercion, threat, or intimidation, or in exchange for money

or other thing of value. So Maloy's equal protection claim fails with respect to soliciting.

ii.    Pandering

¶ 25    A person commits pandering of a child (a class 2 felony) if the person, for money or other thing of value, "[i]nduc[es] a child by menacing or criminal intimidation to commit prostitution[.]" § 18-7-403(1)(a). Pandering is a class 3 felony if, "for money or other thing of value," a person "[k]nowingly arrang[es] or offer[s] to arrange a situation in which a child may practice prostitution." § 18-7-403(1)(b).

¶ 26    Pandering under subsection (1)(b) prohibits substantially different conduct than that criminalized as patronizing. It requires arranging or offering to arrange a situation in which a child may practice prostitution; patronizing doesn't criminalize that behavior. And like soliciting, pandering under subsection (1)(b) doesn't require that the child do anything. The crime is arranging the situation, regardless of whether a child ultimately engages in prostitution or is even present in the scenario.

¶ 27    But subsection (1)(a) is a different story. True, there are two apparent, facial differences between that crime and patronizing.

13

One, pandering requires that the defendant act in exchange for "money or other thing of value," while patronizing may involve, but doesn't necessarily require, such an exchange (coercion, a threat, or intimidation suffices).  Two, pandering requires that the defendant's actions amount to menacing or criminal intimidation, while, again, patronizing may involve, but doesn't require, such conduct (mere coercion, threat, or intimidation, or an exchange of money or other thing of value suffices).  But in the context of this equal protection claim, these differences are meaningless.  This is so for two reasons.

¶ 28      First, requiring proof of more elements (*both* an exchange of money or other thing of value and menacing or criminal intimidation) to obtain a conviction for pandering under subsection (1)(a) — which is *not* subject to indeterminate sentencing — means that the prosecution must prove more than it must to obtain a conviction under the statute bearing the harsher penalty. Punishing a defendant more severely for a crime that may require less proof "bears no rational relationship to a legitimate legislative purpose or government objective" and seems unreasonable and arbitrary.  *Dean*, ¶ 12.

¶ 29    Second, under many applications of the patronizing statute, and certainly under the application in this case, patronizing does not have "greater social impact and more grave consequences." *Montoya*, 196 Colo. at 113, 582 P.2d at 675.  Indeed, proving pandering under subsection (1)(a), under which Maloy was charged (but acquitted), requires a showing that the defendant induced a child to commit prostitution "by menacing or criminal intimidation" — more blameworthy conduct than that proscribed by the patronizing statute.  *Smith v. People*, 852 P.2d 420, 421-22 (Colo. 1993); *People v. Suazo*, 867 P.2d 161, 164-66 (Colo. App. 1993).

### iii.    Inducement

¶ 30    A person commits inducement of child prostitution if he, "by word or action, other than [by menacing or criminal intimidation], induces a child to engage in an act which is prostitution by a child[.]"  § 18-7-405.5.

¶ 31    Breaking this down, a conviction under this statute requires that a defendant, (1) by some word or action, (2) induce a child to perform or offer or agree to perform "[certain sexual acts] [3] with

any person not the child's spouse [4] in exchange for money or other thing of value[.]" §§ 18-7-401(6), -405.5.[5]

¶ 32     As noted, patronizing a prostituted child prohibits (among other things) a person from engaging in inducing a child to perform or offer or agree to perform (or allow another to perform or offer or agree to perform) the same sexual acts by coercion, threat, or intimidation, or in exchange for money or other thing of value.  *See* §§ 18-7-401(7), -406(1)(a).

¶ 33     The critical facial difference between inducement and patronizing in this context is that inducement requires proof that "money or other thing of value" was exchanged; patronizing criminalizes that conduct, but it doesn't necessarily require it: again, coercion or a threat or intimidation suffices.

¶ 34     But again, this potential distinction doesn't convince us that the offenses are different in a way that would defeat Maloy's as-applied equal protection argument.  As noted, in Maloy's case,

---

[5] This is so because prostitution *by* a child requires an exchange of "money or other thing of value," § 18-7-401(6), and inducement specifically proscribes inducing a child to engage in prostitution by a child.  Prostitution *of* a child can, but doesn't necessarily, require that money or a thing of value be exchanged.  *See* § 18-7-401(7).

16

money was exchanged. Thus, his conduct violated both statutes in precisely the same way.

### c. Disposition

¶ 35 We conclude that the patronizing statute violates equal protection as applied to Maloy and that this violation was obvious and substantial. It resulted in Maloy's potential lifetime imprisonment, rather than a determinate sentence of four to twelve years. We therefore vacate Maloy's conviction for patronizing. *See, e.g., People v. Mumaugh,* 644 P.2d 299, 301 (Colo. 1982) (vacating the defendant's conviction after concluding it violated his right to equal protection); *Suazo,* 867 P.2d at 168 (same); *cf. People v. Lee,* 2019 COA 130 (affirming dismissal of counts that violated equal protection).

### B. Mistake of Age Defense

¶ 36 Maloy contends that the district court erred by refusing to allow him to assert a reasonable mistake of age defense and introduce evidence that he thought M.C. was at least eighteen. Specifically, he argues that this defense is available under a correct interpretation of sections 18-1-503.5(1), C.R.S. 2019, and 18-7-407, and that reading the statutes to preclude that defense in this case

violates his rights to equal protection and due process.[6]  We aren't persuaded.

## 1. Standard of Review

¶ 37     We review questions of statutory interpretation de novo. *McCoy v. People*, 2019 CO 44, ¶ 37.  We also review constitutional challenges to a statute de novo.  *People v. Perez-Hernandez*, 2013 COA 160, ¶ 10.

## 2. Sections 18-1-503.5(1) and 18-7-407 Don't Allow a Mistake of Age Defense to The Remaining Charges

¶ 38     Section 18-1-503.5(1) provides in pertinent part that "[i]f the criminality of conduct depends on a child being younger than eighteen years of age and the child was in fact at least fifteen years of age, it shall be an affirmative defense that the defendant reasonably believed the child to be eighteen years of age or older." In contrast, section 18-7-407 provides that, "[i]n any criminal prosecution under sections 18-7-402 to 18-7-407, it shall be *no defense* that the defendant did not know the child's age or that he reasonably believed the child to be eighteen years of age or older."

---

[6] He also argues that there was sufficient evidence to support his reasonable mistake of age defense; but because we conclude that this defense isn't available, we don't address that argument.

(Emphasis added.)  So with respect to Maloy's convictions for pimping a child, keeping a place of prostitution, and inducement of child prostitution, all of which arise under sections 18-7-402 to -407, these two provisions conflict.  *See People v. Houser*, 2013 COA 11, ¶ 19.

¶ 39    When two provisions irreconcilably conflict, the specific provision prevails over the general provision "unless the general statute was enacted more recently than the specific statute, and the legislature manifestly intends that the later-enacted general statute prevail over the earlier-enacted specific statute."  *Jenkins v. Pan. Canal Ry. Co.*, 208 P.3d 238, 241-42 (Colo. 2009).  Section 18-7-407 is more specific because it prohibits the mistake of age defense for certain crimes, while section 18-1-503.5(1) allows the defense generally.  But section 18-1-503.5(1) was enacted more recently than section 18-7-407.[7]  So, Maloy argues, section 18-1-503.5(1) should apply because the General Assembly demonstrated a manifest intent that the general provision prevail.  We disagree.

---

[7] Section 18-1-503.5 was added in 2001.  Ch. 243, sec. 6, 2001 Colo. Sess. Laws 859.  Section 18-7-407 has "remained unchanged since reenactment in 1979[.]"  *People v. Houser*, 2013 COA 11, ¶ 26.

¶ 40　In *Houser*, a division of this court addressed and rejected the same argument.  Noting that the General Assembly's intent is only "manifest" when it is "clear and unmistakable," the division concluded that section 18-7-407 prevails and therefore precluded the defendant from raising a reasonable mistake of age defense to the charge of patronizing a prostituted child.  *Houser*, ¶¶ 20-26.  To support this conclusion, the division discussed the mixed evidence from the legislative record, including the following:

- The first sentence of section 18-1-503.5 was originally in the part of the criminal code relating to "unlawful sexual behavior."  The 2001 bill moved it to the article containing "provisions applicable to offenses generally." *Id.* at ¶ 21.

- The sponsor of the bill in the House said that the bill was meant to "clarif[y]" the law and "doesn't change very much."  *Id.* at ¶ 25.

- Another House sponsor explained that the provision was only meant to apply to offenses that are criminal *solely* because of the victim's age — for example, providing

20

tobacco to minors. (Providing tobacco to an adult isn't a crime.) *Id.* at ¶ 24.

- There was no discussion of how the bill would affect section 18-7-407. *Id.* at ¶ 26.

¶ 41 We agree with *Houser* that while there is some evidence that the General Assembly intended this provision to apply to all crimes, the mixed legislative history doesn't evince a clear, unmistakable intent for the later, general provision to prevail over the earlier, more specific one.

¶ 42 Maloy cites *Gorman v. People*, 19 P.3d 662 (Colo. 2000), a supreme court case from 2000 that led to section 18-1-503.5(1)'s relocation and amendment, in support of his argument that the affirmative defense is available in child prostitution offenses. In *Gorman*, the court held that the affirmative defense applies to the offense of contributing to the delinquency of a minor because the criminality of a defendant's conduct depends on the victim being a minor. *Id.* at 667. But we don't read *Gorman* to hold that reasonable mistake of age is an affirmative defense in child prostitution offenses. Rather, *Gorman* suggests (like one sponsor of the relocation and amendment bill explained) that the defense is

21

applicable where an offense's criminality is based *solely* on the victim's age.  (There is no analogous crime of contributing to the delinquency of an adult.)  And in any event, *Gorman* didn't involve a child prostitution offense to which the bar of section 18-7-407 applied.  Thus, *Gorman* is distinguishable.

¶ 43     We therefore conclude that the district court didn't err by ruling that the affirmative defense of reasonable mistake of age wasn't available to Maloy.

### 3.     Section 18-7-407 Doesn't Violate Equal Protection or Due Process

¶ 44     In the alternative, Maloy contends that if mistake of age isn't an affirmative defense to patronizing a prostituted child, section 18-7-407 violates his rights to equal protection and due process.

#### a.     Equal Protection

¶ 45     Maloy argues that disallowing a mistake of age defense for child prostitution crimes but allowing it for other crimes involving minors as victims violates equal protection.  More specifically, he argues that even if there is a rational basis for imposing harsher penalties when the victim is a minor than when the victim is an

22

adult,[8] "that justification disappears when the victim is close to 18, and the defendant reasonably believes that she is at least 18."  We don't agree.

¶ 46    The United States and Colorado Constitutions guarantee that no person shall be denied equal protection of the law.  U.S. Const. amend. XIV; Colo. Const. art. II, § 25.  Equal protection "assures that those who are similarly situated will be afforded like treatment."  *People v. Griego*, 2018 CO 5, ¶ 35.  The General Assembly may impose harsher penalties "for acts that it perceives to have graver social consequences," but the statutory classification of crimes must be "based on differences that are real in fact and reasonably related" to that purpose.  *Id.* at ¶ 36 (quoting *People v. Jefferson*, 748 P.2d 1223, 1226 (Colo. 1988)); *see Suazo*, 867 P.2d at 164.  When, as in this case, the classification doesn't implicate a traditionally suspect class or fundamental right, we apply rational basis review: the party challenging the statute must show that "the

---

[8] Keeping a place of child prostitution, for instance, is a class 3 felony with a sentencing range of four to twelve years in DOC custody.  *See* §§ 18-1.3-401(1)(a)(V)(A), 18-7-404, C.R.S. 2019.  But keeping a place of prostitution is a class 2 misdemeanor with a maximum sentence of twelve months' imprisonment.  *See* §§ 18-1.3-501(1)(a), 18-7-204, C.R.S. 2019.

statute's classification bears no rational relationship to a legitimate legislative purpose or government objective, or that the classification is otherwise unreasonable, arbitrary, or capricious." *Dean*, ¶ 12.[9]

¶ 47 We start by recognizing that there is a rational basis for drawing a line between adults and minors when it comes to prostitution-related offenses. The Supreme Court has held that "[i]t is evident beyond the need for elaboration that a State's interest in 'safeguarding the physical and psychological well-being of a minor' is 'compelling,'" and that the "prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *New York v. Ferber*, 458 U.S. 747, 756-57 (1982) (quoting *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607 (1982)). Imposing harsher penalties for prostitution-related

---

[9] Maloy's imprisonment doesn't implicate a fundamental right. *See People v. Young*, 859 P.2d 814, 818 (Colo. 1993) ("An adult offender has no fundamental liberty interest in freedom from incarceration."); *People v. Garberding*, 787 P.2d 154, 156 (Colo. 1990) ("[F]elons are not entitled to a particular, or lenient, sentence."). Nor has Maloy argued that this classification implicates a traditionally suspect class.

offenses involving minors is directly related to the goal of protecting minors.

¶ 48    With this in mind, we conclude that there is a rational basis for precluding defendants from avoiding conviction on such offenses by asserting that they didn't know the victim was under eighteen while not precluding such a defense to other offenses involving minors as victims. As noted, child prostitution presents unique opportunities for continued sexual exploitation and abuse. And as noted by the People, in enacting section 18-7-407, the General Assembly recognized that child prostitutes may look and act like adults, and wanted that not to be a defense. *See* Hearings on H.B. 1574 before the H. Health, Env't, Welfare & Instits. Comm., 52d Gen. Assemb., 1st Sess. (Mar. 21 & Apr. 18, 1979). In other words, unlike with other offenses involving minors as victims, child prostitution carries with it an enhanced possibility that the minor will not appear to be a minor, and so to allow mistake of age to be a defense to such offenses risks losing protection for a substantial portion of the protected class of victims.

¶ 49    We therefore reject Maloy's equal protection argument.

### b.    Due Process

¶ 50    Maloy also argues that applying section 18-7-407 rather than the more general section 18-1-503.5(1) violates his substantive due process rights because it creates a strict liability offense.  Again, we don't agree.

¶ 51    At the outset, we note that barring a defendant from raising the affirmative defense of reasonable mistake of age does not transform any of the child prostitution offenses into strict liability offenses.  A strict liability offense contains no culpable mental state requirement — that is, a defendant's conduct is criminalized regardless of whether the defendant acted with any particular mens rea.  *See People v. Ellison*, 14 P.3d 1034, 1038 (Colo. 2000).  Maloy is correct that strict liability crimes tend to be public welfare offenses — like speeding, *see People v. Caddy*, 189 Colo. 353, 355, 540 P.2d 1089, 1091 (1975), or public indecency, *see People v. Hoskay*, 87 P.3d 194, 198 (Colo. App. 2003) — and often carry lower penalties than other crimes.  But he's not correct that the child prostitution statutes are strict liability crimes merely because defendants can't present an affirmative defense to the age element.  Inability to defend against one element of a crime through an

affirmative defense doesn't mean the *entire* offense lacks any mens rea.[10]

¶ 52    And we aren't persuaded by Maloy's apparent argument that even making the age element "strict liability" violates his right to due process. As with equal protection, we review substantive due process claims that don't implicate a fundamental right under the rational basis test: the state must "demonstrate that the legislation bears some reasonable relationship to a legitimate governmental interest." *People v. Young*, 859 P.2d 814, 818 (Colo. 1993). As discussed, preventing defendants from using the mistake of age affirmative defense bears a reasonable relationship to the government's interest of protecting minors from psychological and sexual trauma associated with child prostitution.

C.    Jury Instructions on Complicity

¶ 53    Next, Maloy contends that the district court erred by refusing to give the jury his tendered instructions relating to complicity. We disagree.

---

[10] The People correctly point out that the relevant offenses include, explicitly or implicitly, the mental state of "knowingly" or with intent as to the conduct proscribed. *See* §§ 18-7-404(1)(a), -405, -405.5, -406(1), C.R.S. 2019.

### 1.    Applicable Law and Standard of Review

¶ 54    A district court "has substantial discretion in formulating the jury instructions, so long as they are correct statements of the law and fairly and adequately cover the issues presented." *People v. Nerud*, 2015 COA 27, ¶ 35 (quoting *People v. Gallegos*, 226 P.3d 1112, 1115 (Colo. App. 2009)).  We review jury instructions de novo to determine whether a particular instruction accurately informed the jury of the governing law.  *Riley v. People*, 266 P.3d 1098, 1092 (Colo. 2011).  If it did, we review for an abuse of discretion a district court's decision whether to give the particular instruction.  *See People v. Stellabotte*, 2016 COA 106, ¶ 18, *aff'd on other grounds*, 2018 CO 66.  A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or based on a misapplication of the law.  *Id.*

### 2.    Additional Facts

¶ 55    The district court instructed the jurors on complicity, telling them that "it is a legal theory by which one person may be found guilty of a criminal offense that was committed in whole or in part by another person," and providing them with a list of elements the

28

prosecution was required to prove to show that Maloy was guilty as a complicitor:

> To be found guilty as a complicitor, the prosecution must prove each of the following circumstances beyond a reasonable doubt:
>
> 1. A crime must have been committed.
>
> 2. Another person must have committed all or part of the crime.
>
> 3. The defendant must have had knowledge that the other person intended to commit all or part of the crime.
>
> 4. The defendant must have had the intent to promote or facilitate the commission of the crime.
>
> 5. The defendant must have aided, abetted, advised, or encouraged the other person in planning or committing the crime.
>
> Your decision need not be unanimous as to whether the defendant acted as principal or complicitor with respect to any particular crime charged, as long as each of you is satisfied, beyond a reasonable doubt, that the defendant acted as either principal or complicitor with respect to that particular charge.

¶ 56 Maloy also tendered three instructions related to complicity:

29

- "Guilt by association and mere presence at the scene of a crime do not amount to proof, by themselves, that the accused himself was a part of that crime."

- "Mere knowledge of prostitution is not a crime."

- "An individual does not have a legal duty to stop the commission of prostitution."

The district court rejected each instruction, ruling that the other instructions adequately covered these concepts.

### 3.    Analysis

¶ 57     Maloy doesn't challenge the accuracy of the district court's complicity instruction; rather, he contends only that the court should have given his additional instructions because they were legally accurate, appropriate given the evidence, and not encompassed in the court's other instructions.

¶ 58     But a court has no obligation to give the jury specific instructions, even if they are legally accurate and appropriate given the evidence. *Cf. People v. Paglione,* 2014 COA 54, ¶ 48 (court didn't abuse its discretion by removing "If you entertain a reasonable doubt regarding this issue you must return a verdict of Not Guilty" from the defendant's theory of the case instruction; that

statement was already encompassed in a separate burden of proof instruction). And in this case, the district court correctly determined that the other instructions already covered the concepts in Maloy's tendered instructions. Each of Maloy's tendered instructions conveyed concepts that are at least implied, if not explicit, in the court's complicity instruction. Maloy could not be found guilty based on mere knowledge and presence if, as the court's complicity instruction required, the jury found that he intended to promote or facilitate the commission of the crime and he aided, abetted, advised, or encouraged the other person in planning or committing the crime.

## D. Prosecutorial Misconduct

¶ 59 Last, Maloy contends that the prosecutor committed misconduct by (1) referring to him as the "protection," the "muscle," and the "enforcer" despite a lack of evidence that he fit those descriptions; (2) referencing M.C.'s trauma; and (3) saying "there's no other evidence that [Maloy's] been living anywhere [other than with Sykes]." We aren't persuaded.

### 1. Standard of Review and Applicable Law

¶ 60 We use a two-step analysis to review claims of prosecutorial misconduct: we determine whether the prosecutor's conduct was improper based on the totality of circumstances, and, if so, we determine whether reversal is warranted under the appropriate standard of review. *Wend v. People*, 235 P.3d 1089, 1096-97 (Colo. 2010). Because Maloy's counsel didn't object at trial to any of the prosecutor's statements, we will reverse only if any error was plain. *See Hagos*, ¶ 14; *Domingo-Gomez v. People*, 125 P.3d 1043, 1053 (Colo. 2005).

¶ 61 "[A] prosecutor, while free to strike hard blows, is not at liberty to strike foul ones." *Domingo-Gomez*, 125 P.3d at 1048 (quoting *Wilson v. People*, 743 P.2d 415, 418 (Colo. 1987)). A prosecutor should not "intentionally misstate the evidence or mislead the jury as to the inferences it may draw." *Id.* at 1049 (quoting ABA Standards for Criminal Justice: Prosecution Function and Defense Function § 3-5.8 (3d ed. 1993)). But a prosecutor "has wide latitude to make arguments based on facts in evidence and reasonable inferences drawn from those facts." *People v. Strock*, 252 P.3d 1148, 1153 (Colo. App. 2010); *see Domingo-Gomez*, 125

P.3d at 1048. Accordingly, prosecutorial misconduct does not amount to plain error unless it is "flagrant or glaringly or tremendously improper[.]" *Strock*, 252 P.3d at 1152 (quoting *People v. Weinreich*, 98 P.3d 920, 924 (Colo. App. 2004)).

## 2. Analysis

¶ 62    We conclude that none of the prosecutor's statements to which Maloy points constituted misconduct.

¶ 63    First, the prosecutor's comments during closing argument that Maloy was the "protection," the "muscle," and the "enforcer" reflected the prosecution's theory of how Maloy was involved in M.C.'s prostitution and were reasonable inferences one could draw from the evidence. For example, the jury heard testimony that M.C. thought Maloy was "scary" and that he threatened her and took some of the money she had collected.

¶ 64    Second, we aren't persuaded that the prosecutor's reference to M.C.'s trauma was misconduct. During rebuttal, the prosecutor argued,

> Members of the jury, I'm going to ask you, go back, take time to go through all of the evidence, take time to figure out, is there just one way that a child is supposed to respond to sexual trauma? Is she absolutely supposed to

cry every time she talks about it, or perhaps is
there more than one way to deal with that
trauma. And perhaps — did you observe the
way that [M.C.] is still having to deal with that
trauma? And it was at the hands of the
defendant.

¶ 65    While there was no direct evidence that M.C. suffered trauma,

reasonable jurors could have inferred that M.C. would have

experienced trauma based on the evidence presented. And in

context, the prosecutor wasn't pointing this out to ask the jurors to

render a verdict based on their sympathy for M.C.,[11] but rather to

explain M.C.'s demeanor and to counter the defense attorney's

attacks on her demeanor and credibility.

¶ 66    Third, the prosecutor's statement that "there's no other

evidence that [Maloy's] been living anywhere else" wasn't improper.

Maloy argues that the prosecutor misstated the evidence because a

witness testified that Maloy split his time between different

locations. But taken in context, the statement wasn't misleading

---

[11] Such arguments are improper. A prosecutor may not encourage
the jury to "depart from its duty to decide the case on the evidence"
by appealing to sympathy for the victim. *People v. Leyba*, 2019
COA 144, ¶ 58 (quoting *People v. Dunlap*, 975 P.2d 723, 759 (Colo.
1999)).

and was a reasonable inference to draw from the evidence. The

prosecutor explained that,

> [w]hen they get back to the apartment,
> Apartment 416, [Maloy] walks in freely. This is
> his apartment too. He did not have to be on
> the lease for it to be his apartment. He's
> coming and going as he pleases. He spends
> the night. He wakes up in the morning.
> [Sykes] says he's been living there. There's no
> other evidence that he's been living anywhere
> else.
>
> And so now he's recruited her and brought her
> back to this apartment, and [Sykes] is going to
> train and teach her . . . .

The prosecutor's apparent purpose was to explain to the jury that

Maloy spent a lot of time at Sykes's apartment and treated it like

his home — that he was there a lot, and therefore aware of and

involved in the prostitution. Although a witness testified that Maloy

also spent nights in other places during June of 2014, it wasn't

unreasonable for the prosecutor to draw the inference from the rest

of the evidence that Maloy didn't "live" anywhere else. But even if

that statement were somehow misleading, it wasn't so "flagrant or

glaringly or tremendously improper" that we must reverse Maloy's

conviction.

35

### III.   Conclusion

¶ 67    We vacate Maloy's conviction and sentence on count 4 (patronizing a prostituted child).  The judgment is otherwise affirmed.

JUDGE HARRIS and JUDGE BROWN concur.