22CA0716 Peo v Tucker 07-17-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA0716
Adams County District Court No. 20CR928
Honorable Mark D. Warner, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Charles Gary Tucker,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART AND VACATED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE TOW
Yun and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 17, 2025

Philip J. Weiser, Attorney General, Katharine Gillespie, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, River B. Sedaka, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Charles Gary Tucker, appeals the judgment of conviction entered on a jury verdict finding him guilty of several sexual offenses.  We affirm the judgment in part and vacate it in part, and we remand for correction of the mittimus.

## I.    Background

¶ 2    Evidence introduced at trial would permit the following findings.

¶ 3    In 2006, Al.M., then six-years old, and Am.M., then nine-years old, moved in with their maternal grandmother and her husband (Tucker) after their biological parents could no longer care for them.  Starting shortly thereafter, Tucker sexually abused Am.M. and Al.M. for years.

¶ 4    In the spring of 2020, Am.M. was away at college.  On March 7, 2020, Am.M. was driving to Tucker's house to go to dinner for Tucker's birthday.  On the way, Am.M. called Al.M., and, after initially denying it, Al.M. confirmed that Tucker was abusing her too.  When she got to Tucker's house, Am.M. told Tucker that she wanted "things" to be done with him because she felt like she was cheating on her boyfriend.  She also told him that "there [was] no us," and Tucker got upset.  Am.M. then went to leave, but her

grandmother asked her what was going on. Am.M. told her grandmother that Tucker had been touching her for years. Tucker came outside; Am.M. told him she was not going to dinner; Tucker shoved her and drove off. Am.M. and her grandmother called Al.M., and Al.M. admitted that Tucker had touched her too. Am.M. and her grandmother went to the police station, and Al.M. met them there. Am.M. and Al.M. reported the sexual abuse to the police.

¶ 5 Tucker was charged with sexual assault on a child; sexual assault on a child – pattern of abuse; sexual assault on a child by one in a position of trust – victim under fifteen; and sexual assault on a child by one in a position of trust – victim over fifteen, as to Al.M. and Am.M., respectively, for a total of eight counts.

¶ 6 The jury convicted Tucker of all counts. Tucker was sentenced to an aggregate indeterminate term of twenty-four years to life in prison.

¶ 7 Tucker appeals two evidentiary rulings, contends the prosecutor committed misconduct in rebuttal closing, and argues there was cumulative error. He also challenges his sentences on the two counts of sexual assault on a child (counts one and five) and the two counts of sexual assault on a child by one in a position

2

of trust – victim over fifteen (counts four and eight).  We address each contention in turn.

## II.    Detective's Testimony

¶ 8    Tucker contends that the trial court reversibly erred by admitting a detective's testimony about finding a phone in Tucker's house that had evidence related to Am.M. and Al.M. on it.  Specifically, he argues that this evidence was inadmissible under CRE 401, 403, and 404(b).  And he contends that the court erred by ruling that defense counsel's cross-examination opened the door to such testimony.  We discern no error.

### A.    Additional Background

¶ 9    The People filed a notice to introduce as res gestae[1] evidence of text messages and photos exchanged between both victims and Tucker that were on a phone found during the search of Tucker's house.  Tucker objected under CRE 404(b).  The trial court denied the prosecutor's request under CRE 403 because the text messages had been sent a year after each victim turned eighteen.  However, the court stated that it would not make "a finding at this time that

---

[1] The res gestae doctrine has since been abolished.  *Rojas v. People*, 2022 CO 8, ¶ 41.

those communications could not be relevant.  It kind of depends on what happens at trial and what evidence is introduced by whom.  I suppose to a certain degree the questions and the arguments could make it relevant."  The court ordered the parties to approach prior to any questioning about the text messages.

¶ 10    During the cross-examination of Detective Jai Rogers, defense counsel suggested he had conducted an inadequate investigation by asking about evidence he had neglected to follow up on.  Defense counsel then asked Detective Rogers about the electronic items found during the search of Tucker's house.  Defense counsel had Detective Rogers go through eleven photographs from different rooms where electronics were found.  Defense counsel asked Detective Rogers to identify each photograph, what electronics were visible in each photograph, and whether each item led to "anything of value" or was of "evidentiary importance."

¶ 11    During redirect, the prosecutor asked the court to approach and explained that based on defense counsel's cross-examination,

> it would make it relevant for me to ask
> Detective Rogers about obtaining a cell phone
> during the course of the search warrant as well
> and the fact that there was evidence located on
> that cell phone relate [sic].  I'm not asking to

> necessarily admit specific exhibits from him, but [to] ask him questions about the fact that there was [an] image of [Am.M.'s] breasts found, as well as text messages describing sexual content between the girls.

Defense counsel objected, arguing that the phone was turned over later, so the door was not opened because he only asked Detective Rogers about items found during the execution of the search warrant. The court found that defense counsel had opened the door and allowed the prosecutor to ask "if they downloaded [the content of] one of the phones from the search [and] if there was information [they] found relevant in that."

¶ 12 Rogers then testified that they searched the house for electronics because (1) Am.M. and Al.M. had discussed texts and sexually explicit photographs exchanged with Tucker; (2) Am.M. and Al.M said Tucker told them he moved all the photographs to a zip drive and later destroyed the zip drive; and (3) the search was conducted to make sure those images were not still on any electronic devices. The prosecutor asked if Detective Rogers had found a phone in the office at the house, and Detective Rogers replied that he had. The prosecutor then asked, "[W]as there evidence related to [Am.M. and Al.M.] on that cell phone?" Rogers

5

answered, "Yes, there was." The prosecutor then asked, "Okay. Was that phone believed to be Tucker's cell phone?" Rogers answered affirmatively.

### B. Standard of Review and Applicable Law

¶ 13     We review a trial court's evidentiary rulings for an abuse of discretion. *Dunlap v. People*, 173 P.3d 1054, 1097 (Colo. 2007). A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. *Yusem v. People*, 210 P.3d 458, 463 (Colo. 2009).

¶ 14     "When a party opens the door to otherwise inadmissible evidence, his opponent may then inquire into the previously barred matter." *Golob v. People*, 180 P.3d 1006, 1012 (Colo. 2008). "[T]he opposing party may introduce otherwise inadmissible evidence only to the extent necessary to 'rebut any adverse inferences which might have resulted,' or to correct 'an incorrect or misleading impression.'" *People v. Cohen*, 2019 COA 38, ¶ 26 (citations omitted).

### C. Analysis

¶ 15     Tucker challenges Detective Rogers's answers to the last three questions. He also argues that the trial court erroneously

6

determined that Tucker opened the door to this evidence. We discern no error.

¶ 16    Defense counsel's cross-examination left the incorrect and misleading impression that there was not "anything of value" or "evidentiary importance" on any of Tucker's electronic devices. But the evidence on the phone, though from a time period after the date range for the charges, was of value and evidentiary importance because the fact that Tucker had images of and sexual conversations with Am.M. and Al.M. — albeit after they turned eighteen — supports an inference that they were credible in their testimony about their electronic communications with Tucker when they were still minors. Without the three follow-up questions and answers, the jury would have been left with an inaccurate impression that nothing sexual related to Am.M. and Al.M. was found on any of Tucker's devices, potentially rendering Am.M.'s and Al.M.'s testimony less credible. Thus, the trial court did not abuse its discretion by admitting this evidence.

### III.    Valentine's Day Argument

¶ 17    Tucker contends that the trial court reversibly erred by allowing testimony about a fight between Tucker and Am.M. on

7

Valentine's Day in 2020 because it was irrelevant and unduly prejudicial. We discern no reversible error.

### A. Additional Background

¶ 18 The prosecutor asked Am.M., "Did you and Mr. Tucker have kind of like a specific fight or disagreement on Valentine's Day of 2020?" Am.M. responded, "I did." The prosecutor asked, "And what was that about?" Defense counsel objected on relevance grounds. The prosecutor argued that Am.M.'s relationship with Tucker leading up to Valentine's Day and the fight they had on that day laid the foundation for how the abuse was ultimately reported to the police on March 7, 2020. The court overruled the objection, finding that the probative value of the evidence, as offered, substantially outweighed any prejudicial effect.

¶ 19 Am.M. testified that Tucker had just found out about her new boyfriend; he was upset she was spending time with her boyfriend instead of him; he said he was going to bring her home; and their communication became strained after that interaction. She then recounted what happened on March 7, 2020.

## B. Analysis

¶ 20    Tucker contends that evidence that Am.M. got into a fight with Tucker on Valentine's Day was irrelevant and did not lay the foundation for what happened on March 7, 2020, because it occurred a month prior. He specifically contends that the evidence was prejudicial because it painted him as jealous and controlling, likely leading the jury to hold it against him and conclude that it was more likely that Am.M.'s and Al.M.'s allegations were true. Even assuming, without deciding, that this evidence should not have been admitted, any error in its admission was harmless.

¶ 21    Immediately before the challenged question, Am.M. testified,

> I would have liked to say that we were very close, but now I'm just saying that it was very controlling. He wanted to know everything that I was doing, anybody that I was with. At first, I thought he's just a parent. That's just what he's doing, trying to be overprotective. That's not what he was doing. We kept regular contact. If I didn't answer him within a certain allotted amount of time, he'd blow up my phone saying, "What are you doing? How's it going? Why aren't you answering me?" So I would have to answer him.

She also testified that Tucker would get jealous if she had a boyfriend.

9

¶ 22    When evidence is merely cumulative and does not substantially influence the verdict or affect the trial's fairness, any error in its admission is harmless. *People v. Caldwell*, 43 P.3d 663, 668 (Colo. App. 2001).

¶ 23    Any improperly admitted evidence that painted Tucker as controlling and jealous was cumulative of other testimony from Am.M. — not objected to at trial or challenged on appeal — describing Tucker in the same light. Therefore, any error in admitting the challenged testimony could not have contributed to the jury's verdict and was harmless error. *See People v. Short*, 2018 COA 47, ¶ 57 (error in admitting evidence was harmless when evidence was cumulative of properly admitted testimony).

IV.    Prosecutorial Misconduct

¶ 24    Tucker contends that the prosecutor committed misconduct during rebuttal closing argument. We disagree.

A.    Applicable Law and Standard of Review

¶ 25    We engage in a two-step analysis when reviewing claims of prosecutorial misconduct. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). First, we determine whether the conduct was improper based on the totality of the circumstances. *Id.* In doing

10

so, we evaluate claims of improper argument in the context of the argument as a whole and in light of the evidence before the jury. *People v. Conyac*, 2014 COA 8M, ¶ 132. Next, we consider whether such actions warrant reversal under the applicable standard. *Wend*, 235 P.3d at 1096.

### 1. Analysis

#### a. First Statement

¶ 26 Tucker contends that the following prosecutorial argument was improper:

> One person controlled this crime. One person controlled the location where the crime occurred. One person controlled the witnesses. That would see what was happening. One person controlled the evidence that would be left behind. And one person carefully selected two victims. Two victims that he knew were vulnerable. That he knew could easily be exploited because they had a bad history.
>
> They had already experienced what it's like to be removed from your family unit. Two victims who were scared of being separated from their siblings and that vulnerability was exploited to keep two victims silent for almost a decade and the one person who controlled all of these aspects is sitting right before you. It's Charles Tucker.

We are not persuaded that this argument was improper.

11

¶ 27     The prosecutor did not improperly express her opinion that Tucker was guilty when making the "one person" statements.  At trial, the prosecution presented evidence that (1) Tucker initiated the sexual abuse of Al.M. and Am.M. when they were young; (2) Tucker controlled when and where the abuse took place, including, for example, that Tucker would refrain from doing anything if anyone was inside the house; (3) Tucker destroyed digital evidence; and (4) Al.M. and Am.M. did not disclose the abuse earlier because Tucker implied that if their situation with their grandparents did not work out, they would be separated from their siblings and placed in foster care.  Therefore, based on the evidence and reasonable inferences drawn therefrom, it was proper for the prosecutor to argue that Tucker controlled the crime because he dictated the location of the abuse, the victims, and the evidence left behind.[2]  *See People v. Wilson*, 2014 COA 114, ¶ 55 (concluding that the prosecutor was drawing reasonable inferences from the evidence rather than professing her personal opinion as to the victim's veracity); *see also Conyac*, ¶ 139 (prosecutor was not

_____

[2] Tucker acknowledges in his reply brief that the prosecutor's argument tracked the evidence presented at trial.

12

expressing personal opinion but was instead using rhetorical devices).

¶ 28    Nor was the prosecutor's statement, "It's Charles Tucker," improper; a prosecutor is allowed to state her position that the jury should find the defendant guilty.  *See People v. Villa*, 240 P.3d 343, 358 (Colo. App. 2009) ("[T]he prosecutor's statement asking the jury to '[f]ind [defendant] guilty, because he is guilty' . . . ask[ed] the jury to make a reasonable inference that defendant was guilty based on the evidence . . . [and] reiterated the prosecution's position that defendant was guilty of the crime charged.").

¶ 29    The prosecutor did not misstate the evidence when she said Tucker "carefully selected two victims."  It was a reasonable inference from the evidence that Tucker chose Al.M. and Am.M. to sexually abuse after they moved in with him at young ages.  *See People v. Maloy*, 2020 COA 71, ¶ 66 (concluding that, in context, the prosecutor's statement was not misleading and was a reasonable inference to draw from the evidence).

¶ 30    The prosecutor did not improperly ask the jury to convict out of sympathy for the victims due to their troubled pasts, separation from their parents, and placement with their grandparents.  Rather,

the prosecutor was commenting on the evidence regarding how Al.M. and Am.M. came to live with their grandparents; how Tucker exploited their living situation to abuse them; and how Tucker implied to them that if anything happened to him, they would be placed in foster care.

### b. Second Statement

¶ 31 Tucker also contends that the prosecutor committed misconduct by saying,

> Mr. Tucker makes a statement to [the girls' grandmother]. He says, I can't lose my baby. [Am.M.] was the baby. And that is the head-space that he was in as he takes off that day. He's asking, Why are law enforcement at the house? He knows why they're there. He knows that he's been subjecting these girls to sexual abuse since when they moved into that house in 2006.
>
> There's a reason he's not telling law enforcement where he's at that night. I can't lose my baby. Well, Mr. Tucker, on March 7th, 2020, you lost your baby because [Am.M.] and [Al.M.] had the courage to finally come forward and say, This is not going to happen. This is the sexual assault that's been perpetrated on us since we were young girls.
>
> This man was tasked with loving and protecting those girls, caring for them, guiding them through their childhood. And instead, he used that relationship, that power, that

14

> inherent trust, and he took advantage of them in one of the worst ways possible. He should be held accountable for what did [sic]. You should find him guilty.

Again, we are not persuaded.

¶ 32    Tucker first contends that this was improper because it asked the jury to do justice for sympathetic victims, specifically by the prosecutor "channeling" the victims by speaking in the first person. We disagree. The only statements that could be considered channeling are, "[T]his is not going to happen. This is the sexual assault that's been perpetrated on us since we were young girls." Golden rule arguments, which ask jurors to imagine themselves in the place of the victim, are improper because they have the potential to incite jurors to reach a verdict based on bias or prejudice. *People v. Manyik*, 2016 COA 42, ¶ 28. But this case is unlike *Manyik*, on which Tucker relies. There, the division concluded that it was improper for the prosecutor to "channel[]" the victim by speaking "to the jury in the first person as though he were the victim" narrating the victim's murder during opening statement. *Id.* at ¶¶ 27, 33-34. The prosecutor here, however, did not ask prospective jurors to place themselves — nor did she place

15

herself — in the position of a person who had been sexually abused. Instead, the prosecutor recited the evidence introduced at trial that Al.M. and Am.M. reported the abuse that had been occurring since they were young and Tucker's response.

¶ 33     Nor does *Manyik* stand for the proposition that it is improper for the prosecutor to channel the defendant in second person, as Tucker contends.[3]  And to the extent Tucker contends that it was improper for the prosecutor to say that Tucker "lost [his] baby," Am.M. testified that Tucker "was begging to have an 'us' because he wanted to have his baby girl"; therefore, this comment was not improper because it was directly tied to the evidence.

¶ 34     Tucker also contends that the prosecutor improperly asked the jury to hold Tucker accountable, which encouraged the jurors to do justice for a sympathetic victim.  We disagree.  In context, these statements were not improper because they were made at the end of rebuttal closing after the prosecutor went through all the

---

[3] To the extent Tucker, for the first time in his reply brief, argues that this is akin to the prosecutor channeling the victim, we do not address it.  *See People v. Hall*, 59 P.3d 298, 301 (Colo. App. 2002).  And to the extent Tucker also contends that the prosecutor appealed to community sentiment, it is an undeveloped argument, and we do not address it.  *See People v. Cuellar*, 2023 COA 20, ¶ 44.

16

evidence establishing Tucker's guilt and immediately before the prosecutor asked the jury to find Tucker guilty.[4] *See People v. Tran,* 2020 COA 99, ¶ 68 ("[T]he prosecutor's argument that the jury 'need[ed] to hold [the defendant] accountable' was not improper because the prosecutor made this comment immediately after arguing that the evidence established [the defendant's] guilt" and asking the jury to find him guilty.).

## V. Sentencing

### A. Counts One and Five

¶ 35    Tucker contends that the trial court erred by not merging the sexual assault on a child (counts one and five) convictions into the sexual assault on a child – pattern of abuse (counts two and six) convictions, respectively, and that the sexual assault on a child convictions should therefore be vacated. In response, the People concede that the convictions for counts one and five must be vacated, but not for the reasons Tucker claims. Instead, the People

---

[4] Because we have only assumed one error by the trial court, we conclude that there is no cumulative error. *See Howard-Walker v. People*, 2019 CO 69, ¶ 25 (cumulative error requires multiple errors).

contend that these counts are not supported by a guilty verdict specific to those counts.

¶ 36 The verdict forms are unclear in this regard. If they are as the People read them, the People are correct that the jury was never asked to determine whether Tucker was guilty of sexual assault on a child without the pattern of abuse enhancer. If the verdict forms are as Tucker reads them, he is correct that the jury's finding of a pattern of abuse simply enhances the penalty for sexual assault on a child. *See People v. Luman*, 994 P.2d 432, 438 (Colo. App. 1999).

¶ 37 Because either path leads to the same result — vacatur of the sexual assault on a child convictions — we need not resolve the analytical disagreement and, instead, simply vacate the convictions for counts one and five.

### B. Counts Four and Eight

¶ 38 Tucker also contends that the trial court erred in sentencing him on counts four and eight because the court misapprehended the sentencing range.[5] We discern no basis for reversal.

---

[5] Tucker directs the same challenge to the sentences for sexual assault on a child (counts one and five). Because we have vacated those convictions, that challenge is moot. *See People v. Fuentes*, 258 P.3d 320, 326 (Colo. App. 2011).

18

¶ 39 At sentencing, the trial court said that "the sexual assault of a child by one in a position of trust as a Class 4 felony . . . would be up to 12 years to life, with a 10-year period of discretionary parole." The trial court sentenced Tucker to six years to life on counts four and eight.

¶ 40 For the crime of sexual assault by one in a position of trust – victim over fifteen, Tucker could be sentenced to an indeterminate sentence with a base term of between two and six years. *See* § 18-1.3-401(1)(a)(V)(A), C.R.S. 2024; § 18-3-405.3(3), C.R.S. 2024; § 18-1.3-1004(1)(a), C.R.S. 2024. (Although under the statutory sentencing scheme, the range could have been expanded to up to twelve years if there was aggravation, the People did not charge or argue any aggravation.) The trial court sentenced Tucker to six years to life based on its apparent belief that the base range was between two and twelve years.

¶ 41 Generally, when "a trial court misapprehends the scope of its discretion in imposing sentence, a remand is necessary for reconsideration of the sentence within the appropriate sentencing range." *People v. Linares–Guzman*, 195 P.3d 1130, 1137 (Colo. App. 2008).

¶ 42    However, because Tucker did not object at sentencing, this error is unpreserved. We thus review for plain error. *See People v. Baca*, 2015 COA 153, ¶ 56, *overruled on other grounds by Gonzales v. People*, 2020 CO 71. To demonstrate plain error, Tucker must show that the error affects his substantial rights. *See People v. Crabtree*, 2024 CO 40M, ¶ 4 n.4. Tucker cannot do so here. For each victim, the six-years-to-life indeterminate sentence is concurrent with a controlling twelve-years-to-life sentence on the sexual assault on a child – pattern of abuse count. Thus, even if the court were to resentence Tucker on the position of trust counts to a floor that is less than six years, it would have no impact on his parole eligibility date. Because the error did not affect Tucker's substantial rights, we decline to disturb his sentences on counts four and eight.

## VI.    Disposition

¶ 43    The convictions for counts one and five, and their respective sentences, are vacated, and the case is remanded for correction of the mittimus. The judgment is affirmed in all other respects.

JUDGE YUN and JUDGE SULLIVAN concur.